James E. STANFORD, Plaintiff,

v.

BURLINGTON NORTHERN RAILROAD COMPANY, Defendant.

Civ. A. EC 91–60–D–D.

United States District Court, N.D. Mississippi, E.D.

Feb. 24, 1994.

---

15. The issue of federal preemption was not discussed in the *Wilner* case presumably because the parties did not raise it.

Barbara Tutor, Oxford, MS, for plaintiff.

Taylor B. Smith, Columbus, MS, for defendant.

## MEMORANDUM OPINION

DAVIDSON, District Judge.

This case stems from an accident which occurred at a grade railroad crossing in Union County, Mississippi. Plaintiff was injured as a result of a collision between the train and the trailer truck he was driving at the time. On May 22, 1992, this court issued a thorough twelve (12) page opinion in the case *sub judice* which addressed the railroad's motion for partial summary judgment. At issue was the preemptive force of federal law in the place of state common law negligence claims in the context of railroad accidents at grade crossings. Specifically, the question before the court was the extent, if any, to which the Federal Railroad Safety Act of 1970 (FRSA), 84 Stat. 971, as amended, 45 U.S.C. §§ 421–447, and the Federal Highway Safety Act, 23 U.S.C. §§ 101 and 401, *et seq.* preempted Stanford's common law negligence claim. In the May 1992 opinion, this court addressed the issue by following the lead of the Eleventh Circuit in the case of *Easterwood v. CSX Transportation, Inc.*, 933 F.2d 1548 (11th Cir.1991).

In the court's order which accompanied the opinion, the court denied the railroad's motion for partial summary judgment on the issue of adequacy of the warning system at the crossing. The railroad had argued that the standards governing the particular warning system at this crossing were matters preempted by federal law and regulations. Although the motion for partial summary judgment was denied as to this issue, the order did allow defendant to make arguments in the nature of a motion in limine concerning whether a state policymaker had made an affirmative decision with regard to the crossing at issue. As explained in the memorandum opinion, whether or not a state policymaker had acted with regard to this particular crossing was potentially a key factor in determining whether preemption applied on the claim of an inadequate warning system. Second, the court held in abeyance plaintiff's claim of negligent or excessive speed and invited the issue to be presented in a motion in limine. "Before plaintiff's counsel will be prohibited from commenting on or putting forth testimony on the speed of the train, the court will consider additional arguments in the nature of a motion in limine."

As indicated by the above discussion, the court's opinion and order, out of necessity, left two issues unresolved. Rather than exercising reasonable patience to allow the court to take up these matters in the form of a motion in limine prior to trial, *both* parties dashed to the word processor and generated a motion to alter or amend the May 1992 opinion and order. Both motions are now pending and will be addressed herein. The court file indicates that the last setting for trial in the case *sub judice* was for November 30, 1992. However, a fortuitous turn of

events for the court and for the parties occurred when the United States Supreme Court granted certiorari in the Eleventh Circuit case, *Easterwood v. CSX Transportation, Inc., supra,* which had been relied upon by the undersigned for its May 1992 memorandum opinion. Consequently, the trial in this case was continued pending resolution of the controlling issues of law, (i.e., the extent of federal law preemption). *Easterwood* was decided by the United States Supreme Court on April 21, 1993; and now, this court need only apply the law as clarified in *Easterwood* to the facts of this case. *See CSX Transportation, Inc. v. Easterwood,* 507 U.S. ——, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993). Namely, the court and the parties are interested in the extent of federal preemption with regard to the rate of speed of the train and the adequacy of the warning system at this particular crossing. With *Easterwood* now decided, the court can now modify its order of May 22, 1992 to accommodate the holding of the Supreme Court. In essence, this will address both plaintiff's and defendant's motion to alter or amend. Additionally, there is a somewhat novel matter concerning an application for appeal from an order of the magistrate judge which quashed a subpoena duces tecum served upon Charles J. Mikhail, an attorney for the Mississippi Bar Association. All of the above will be discussed in due course.

*The Train's Rate of Speed*

■ As discussed above, this court's order held the issue of the train's speed in abeyance. However, that question was conclusively resolved in *Easterwood.* *Easterwood* held that a plaintiff's claim of excessive speed is preempted by federal law and regulations.

> We hold that, under the Federal Railroad Safety Act, federal regulations adopted by the Secretary of Transportation pre-empt respondent's negligence action only insofar as it asserts that petitioner's train was traveling at an excessive speed.

*Easterwood,* 507 U.S. at ——, 113 S.Ct. at 1734, 123 L.Ed.2d at 404.

The Supreme Court's holding on the speed preemption was in agreement with the Eleventh Circuit's position on the same issue. The May 1992 opinion articulated some concern over the Circuit's approach at arriving at this result.[1] However, the *Easterwood* Court addressed the same concerns which the undersigned alluded to in this court's opinion. Consistent with the holding of the Supreme Court, the undersigned will modify the order to grant the railroad's motion for partial summary judgment on the issue of the train's speed.

*Warning Systems at Grade Crossings*

■ *Easterwood* instructs that federal preemption applies to crossing sites *if federal funds are used to improve or evaluate a warning system at a particular site.* Otherwise, there is no preemption. *Easterwood,* 507 U.S. at ——, 113 S.Ct. at 1741, 123 L.Ed.2d at 400–01.

> In short, for projects in which federal funds participate in the installation of warning devices, the Secretary has determined the devices to be installed and the means by which railroads are to participate in their selection. The Secretary's regulations therefore cover the subject matter of state law which, like the tort law on which respondent relies, seeks to impose an independent duty on a railroad to identify and/or repair dangerous crossings.

In the case at bar, the site in question is designated as DOT668–282–M. Upon review of the record, the court does not perceive any evidence of an effort which utilized federal funds, to evaluate or improve this site. If that is true, then no federal preemption applies. To this end, the court is of the opinion that its initial approach to treat this as a motion in limine is still the prudent course. Prior to trial, if the railroad can point the court to some evidence that establishes to use of federal funds to study or improve this particular site, then the court will reconsider. Otherwise, the court is under the impression that preemption does not apply.

---

1. For example, the court questioned whether the regulations considered certain track conditions

at various points along the rail.

*Appeal of the Magistrate Judge's Order*

As a result of the accident which occurred on December 17, 1986, plaintiff suffered personal injuries which he contends prevented him from resuming his occupation as a truck driver. The railroad disputes this claim alleging that Stanford was able to resume truck driving immediately after the accident. Initially, Mr. Stanford employed an attorney other than his present counsel to file his suit. His first choice of counsel was apparently disastrous since a bar disciplinary proceeding was conducted against the attorney pertaining to this case. The Mississippi Supreme Court imposed a harsher punishment than the tribunal, and the decision is reported at *Mississippi State Bar v. Attorney D*, 579 So.2d 559 (Miss.1991). In any event, the defendant subpoenaed the Bar's attorney, Charles Mikhail, to appear at the trial of this case with a copy of the civil complaint filed by "Attorney D". The railroad takes the position that the complaint contains probative, relevant evidence on whether plaintiff desired and was able to return to work after the accident.

> Defendant contends that this is relevant probative evidence for possible use in the impeachment process in the event Plaintiff continues in his denial that he desired after this accident to return to his truck driving duties with his former employer and continues in his allegation that he was not able to return because of his alleged injury received in the accident.

The Mississippi Bar Association moved to quash the subpoena on the grounds that the information sought was confidential and protected by *Miss.Code Ann.* § 73–3–343 (confidentiality of matters under investigation). The plaintiff joined in the motion by the Bar. On September 10, 1992, the Magistrate Judge entered an Order Granting Motion to Quash. From this Order, the Defendant has filed an application of review with the district judge.

■ At the time the Magistrate Judge entered the Order, the pre-trial order had been entered in this case on May 13, 1992.

Consistent with the Uniform Local Rule 8(i), all motions subsequent to the pre-trial order are to be submitted to the assigned trial judge. Therefore, the Defendant is correct to point out that the motion to quash should have been submitted and acted upon by the undersigned. Through inadvertence,[2] the motion was submitted to the magistrate judge who issued a ruling. The court has reviewed the motion to quash and the application for review and plaintiff's response. The legitimate interests of all concerned can be protected under the following approach. Once the case is re-set for trial, The Mississippi Bar will remain under the subpoena. The Bar will produce a copy of the complaint with the name of the attorney redacted from the same. This will protect the confidentiality interests of the Bar as addressed in Mississippi Code Annotated § 73–3–343. Prior to the start of trial, the court will review the complaint to determine its relevance and evidentiary value, if any. Obviously, the parties will be afforded an opportunity to address the court on the proposed and potential use of the complaint. At that time, the court will issue a ruling on Defendant's use of the document at trial.

Finally, the court will draft an order consistent with the positions taken in this memorandum opinion. As noted, both parties have filed motions to alter or amend based on the issues discussed herein. The Order will include a directive to the clerk that this case shall be re-set for trial at the first available opportunity for a priority setting.

---

**2.** After the entry of the pre-trial order, the case was continued at least twice in 1992, and the motion to quash was submitted by a nonparty. Therefore, the inadvertence is understandable.